AF Approval ~~RKJ~~ *RKJ for SN*                    Chief Approval *RDB*

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 8:21-cr-101-KKM-SPF

BRANDON WILLIAMS

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, BRANDON WILLIAMS, and the attorney for the defendant, Ronald Marzullo, mutually agree as follows:

A.  **Particularized Terms**

1.    **Count Pleading To**

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349.

2.    **Maximum Penalties**

Count One carries a maximum sentence of 20 years' imprisonment, a fine of up to $250,000, a term of supervised release of not more than three years, and a special assessment of $100 per felony count for individuals. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the

Defendant's Initials *BJW*

offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.   Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:   two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit mail and/or wire fraud, as charged in the indictment; and

Second:   the Defendant knew the unlawful purpose of the plan and willfully joined in it.

4.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, arising out of the facts described in the plea agreement.

5.   Mandatory Restitution to Victim of Offense of Conviction

Pursuant to 18 U.S.C. § 3663A(a), defendant agrees to make full restitution to the victims of the crimes to which he is pleading guilty. The defendant acknowledges that the final restitution amount will be determined by the Court at the time of sentencing, but the parties estimate the restitution will be $347,148.

Defendant's Initials  *BJW*                    2

6.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.    Adjusted Offense Level - Estimate Only

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States, based on the information now available to it, estimates that the defendant's adjusted offense level is 24, as determined below:

Defendant's Initials _BJW_                3

| Guideline | Description | Levels |
|---|---|---|
| § 2B1.1(a)(2) | Base Offense | 7 |
| § 2B1.1(b)(1) | Specific Offense Characteristic, Loss between $1.5 and $3.5 Million | +16 |
| § 2B1.1(b)(2)(A)(i) | Specific Offense Characteristic, 10 or more victims | +2 |
| § 2B1.1(b)(10)(B) | Specific Office Characteristic, Substantial portion committed outside U.S. | +2 |
| § 3E1.1(a) & (b) | Acceptance of Responsibility | -3 |
| | | |
| Total Adjusted Offense Level | | 24 |

The defendant understands that this estimate is not binding on the Court or the United States, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

8.  Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials BJW                    4

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.   <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States

Defendant's Initials _BJW_                5

Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    10.   <u>Use of Information - Section 1B1.8</u>

        Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

Defendant's Initials _BJW_        6

AF Approval _____                    Chief Approval _____

11.   Cooperation - Responsibilities of Parties

a.   The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.   It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)   The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware

Defendant's Initials  *BJW*

of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case

Defendant's Initials _BJW_                    8

but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and ...

12.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant

Defendant's Initials _BJW_                    9

agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing.  In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant's Initials  BJW                    10

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.**   **Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as

Defendant's Initials _BJW_                11

to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

Defendant's Initials  BJW                12

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five

Defendant's Initials  BJW                    13

years. The defendant similarly agrees and authorizes the United States Attorney's

Office to provide to, and obtain from, the United States Probation Office, the

financial affidavit, any of the defendant's federal, state, and local tax returns, bank

records and any other financial information concerning the defendant, for the

purpose of making any recommendations to the Court and for collecting any

assessments, fines, restitution, or forfeiture ordered by the Court. The defendant

expressly authorizes the United States Attorney's Office to obtain current credit

reports in order to evaluate the defendant's ability to satisfy any financial obligation

imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor

bound by this agreement. The Court may accept or reject the agreement, or defer a

decision until it has had an opportunity to consider the presentence report prepared

by the United States Probation Office. The defendant understands and

acknowledges that, although the parties are permitted to make recommendations and

present arguments to the Court, the sentence will be determined solely by the Court,

with the assistance of the United States Probation Office. Defendant further

understands and acknowledges that any discussions between defendant or

defendant's attorney and the attorney or other agents for the government regarding

any recommendations by the government are not binding on the Court and that,

should any recommendations be rejected, defendant will not be permitted to

withdraw defendant's plea pursuant to this plea agreement. The government

Defendant's Initials _BJW_                    14

expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials  BJW                    15

9.   Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.   Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant

Defendant's Initials  BJW                    16

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

      11.   Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

Beginning on an unknown date, but at least from in or around summer 2015, and continuing through in or around spring 2017, the defendant conspired with others (including at least one conspirator—Allen Levinson—located outside of the United States) to commit wire and mail fraud. As a part of the conspiracy, some conspirators (primarily Levinson) obtained unauthorized access to U.S. businesses' computer servers; participated in stealing from those servers the personally identifying information ("PII") of U.S. residents; and used that information to file false and fraudulent Department of the Treasury–Internal Revenue Service Form 1040, U.S. Individual Income Tax Returns ("Form(s) 1040") seeking income tax

Defendant's Initials _BJW_        17

refunds with the Internal Revenue Service ("IRS"). Brandon Williams' role was as a U.S.-based recipient of these funds; there were numerous other U.S.-based recipients (many of whom Williams did not know). Levinson and others directed these inflated refunds to be paid (1) onto prepaid debit cards held by U.S.-based conspirators such as Williams (typically mailed to addresses these conspirators controlled or to which they had access); (2) into bank accounts that the conspirators (including Williams) opened and controlled; and/or (3) via check, mailed to the U.S. victim, but redirected via mail forwarding to addresses the U.S.-based conspirators (such as Williams) controlled or to which they had access. The conspiratorial conduct was executed using interstate and foreign wire transmissions and the U.S. Mail.

A "server" was a computer that provided services for other computers connected to it via a computer network—i.e., a set of computers connected together locally for the purpose of sharing resources—or the internet. Servers could be physically located and accessed anywhere with a network or internet connection. A server could have been a physical or virtual machine. A physical server was a piece of computer hardware configured as a server. Multiple virtual servers could be located on a single physical server, but each virtual server's data would be segregated from the data of the other virtual servers. An "internet protocol address" or "IP address" was a unique identifier assigned to every computer on the internet or a local network, much like a phone number. Remote Desktop Protocol allowed a user to connect to another computer over a network and remotely control the computer.

Defendant's Initials  _BTW_                    18

The xDedic Marketplace was a website, established in around October 2014, which illegally sold credentials (i.e., usernames and passwords) of compromised computer servers as well as personally identifying information (specifically social security numbers) of U.S. citizens. A conspirator who went by the moniker "Horsepawer" had an account on the xDedic Marketplace, where he obtained these credentials, including credentials that belonged to computers and/or servers physically located within the Middle District of Florida.

Defendant Brandon Williams communicated with Horsepawer by email using email address Bdub_24@me.com and using a messaging application called Trillian, using the account name "back2damon3y."

In or around fall 2016, Horsepawer gained access to two IP addresses. One belonged to Firm A, a CPA firm in Utah, at which victim J.S. was a client. The second, ending in .102, was used to file fraudulent tax returns from Firm A and several other firms; the conspirators filed approximately 74 false and fraudulent IRS Forms 1040 in 2016, including one in the name of J.S.

On August 22, 2016, Horsepawer sent 28 debit card numbers, expiration dates, and CVV codes to a conspirator believed to be located in Vietnam via Trillian, including a card number ending in -3697 (the J.S. card). The J.S. card was activated on August, 22, 2016. Also on August 22, 2016, a fraudulent IRS Form 1040 was filed in the name of J.S., and the return generated a $9,921 refund. Per the directions on the IRS Form 1040, the refund was deposited onto the J.S. card on August 29, 2016.

Defendant's Initials ___BW___              19

On August 29, 2016, via Trillian, Horsepawer provided Brandon Williams with a list of 38 prepaid debit card numbers, and corresponding amounts to be withdrawn from each card. The list included the J.S. Card.

On August 31, 2016, two money orders were purchased at a Walmart in San Diego, California, using the J.S. card. Money order ending in -6759, for $1,000, was made out to T'Andre McNeely. This money order was later endorsed with McNeely's signature, cashed, and cleared through the bank on September 27, 2016.

Records from Spirit Airlines reveal that Brandon Williams and flew from San Diego, California, to Houston, Texas, on September 1, 2016, the day after the San Diego money orders were purchased. Also on September 1, 2016, two money orders were purchased at a Walmart in a suburb of Houston, Texas, again with the J.S. card. Money order ending in -2009, for $1,000, was made out to T'Andre McNeely and was later endorsed with McNeely's signature, cashed, and cleared through the bank on September 9, 2016. Money order ending in -2010, for $1,000, was also made out to T'Andre McNeely, and was later endorsed with McNeely's signature, cashed, and cleared through the bank on September 9, 2016.

On September 2, 2016, three postal money orders were purchased at a post office in Houston, Texas, again with the J.S. card. Money orders ending in -4455 and -4467, each for $1,000, were made out to Brandon Williams, and were later endorsed with Williams's signature, and cashed at an unknown location and date. Money order ending in -4456, for $1,000, was also made out to Brandon

Defendant's Initials  BJW          20

Williams, and was later endorsed with Brandon Williams's signature, and cashed on September 6, 2016, at a post office in Rancho Cucamonga, California.

Firm B was a CPA and tax preparation firm located in the Middle District of Florida, which was the victim of a computer compromise in or around August 2016. Horsepawer obtained information regarding Firm B's clients, and used that information to file false and fraudulent IRS Forms 1040 from another server located in California. Horsepawer used still another server to log into the USPS website and forward the mail of several Middle District of Florida residents to addresses the conspirators controlled, for the purpose of capturing fraudulently requested IRS Form 1040 refunds. Each of these refund checks was mailed from outside of the state of Florida to the Middle District of Florida, before being forwarded (in some cases) to an address controlled by the conspirators. The J.S. card was among the cards used to conduct mail forwardings. On or about August 28, 2016, a false and fraudulent 2015 IRS Form 1040 was filed for S.E. and D.E., claiming a refund in the amount of $553,431. The fraudulent refund generated a Treasury check, dated September 23, 2016, in the amount of $553,431, which was directed to be mailed to the S.E. and D.E.'s home address in the Middle District of Florida. Due to mail forwarding, after the S.E. and D.E. refund check arrived in the Middle District of Florida, it was forwarded to an address the conspirators controlled. The total intended loss for which Brandon Williams is held accountable is approximately $2,197,734; these losses were within the scope of the conspiracy in which Brandon Williams was involved and were reasonably foreseeable to him in

Defendant's Initials _BJW_                21

that the proceeds were directed to be paid onto prepaid debit cards in his possession

or control, or were mailed to addresses to which he had access. The total actual loss

to the IRS was $347,148. The offense involved more than ten individual victims.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the

government and the defendant with respect to the aforementioned guilty plea and no

other promises, agreements, or representations exist or have been made to the

defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this _17_ day of _March_____, 2022.

ROGER B. HANDBERG
United States Attorney

_____
Brandon Williams
Defendant

_____
Rachel K. Jones
Assistant United States Attorney

_____
Ronald J. Marzullo
Attorney for Defendant

_____
Rachelle DesVaux Bedke
Assistant United States Attorney
Chief, Economic Crimes Section

Defendant's Initials _____        22